# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

**CHARLOTTE MORRIS**                                    **CASE NO.  1:22-CV-06046**

**VERSUS**                                                          **JUDGE TERRY A. DOUGHTY**

**STATE FARM FIRE & CASUALTY CO**          **MAGISTRATE JUDGE PEREZ-MONTES**

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 39] filed by Defendant, State Farm Fire & Casualty Co. ("Defendant" or "State Farm"). Plaintiff, Judy Skluzacek ("Plaintiff" or "Skluzacek"), filed a Response [Doc. No. 45], to which Defendant filed a Reply [Doc. No. 52].

For the reasons set forth herein, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     FACTS AND PROCEDURAL BACKGROUND

This case arises from an insurance coverage dispute.[1] Charlotte Morris ("Morris") purchased insurance policy 18-99-5346-6 ("Policy") through State Farm to cover her property located at 2435 Jackson Street in Alexandria, Louisiana ("property" or "Insured Premises").[2] This Policy was in effect on the alleged loss date of August 27, 2020.[3]

The Policy imposes various obligations on an insured, and an insured may not bring an action against State Farm "unless there has been full compliance with all of the policy

---

[1] [Doc. No. 1-2].
[2] [*Id.*, ¶ 5-6]; [Doc. No. 39-1, ¶ 13]; [Doc. No. 39-4, p. 1, 6].
[3] [Doc. No. 37-8, p. 1].

provisions."[4] Relevant here, an insured agrees to immediately notify an agent of their loss and submit to State Farm, within either 60 or 180 days, a signed sworn proof of loss.[5]

In October 2010, State Farm inspected the Insured Premises, and the inspector concluded that Morris's roof was in "good condition" and the property was "immaculate."[6] At some point after this inspection but before 2020, Morris was allegedly diagnosed with dementia.[7] Skluzacek testified that Morris "was getting dementia so bad. She was forgetting things with her work."[8]

On August 27, 2020, Hurricane Laura made landfall in Louisiana.[9] The next day, Skluzacek helped Morris clean up her property.[10] Skluzacek observed water leaking through the roof and "slates from the roof laying on the ground everywhere."[11] Skluzacek told Morris to make a claim, but Morris said she could not deal with it.[12] Skluzacek testified:

> And I said, "Charlotte, what you going to do about this room? Are you going to get it fixed?" I said, "You need to make a claim." She said, "Judy, I can't. I -- I am too emotional. I cannot deal with this right now." Charlotte -- with this dementia, she would fall apart about every little thing. I don't care what it was. But she fell apart. She said, "I cannot deal with it right now. I'm sorry." And I said, "Well, you need to file a claim. You have never filed a claim on this house in your life. It's time." And she said, "I just can't deal. I can't deal with it." She was sick. Charlotte was, like, one way one day and the next day another way.[13]

On March 18, 2021, Morris filed a claim with State Farm after a pipe to the toilet burst, damaging the floor.[14] State Farm paid Morris $5,700.00 and closed the claim.[15] Skluzacek

---

[4] [Doc. No. 39-4, p. 40].
[5] [Doc. No. 39-1, ¶ 14]; [Doc. No. 39-4, p. 38-39].
[6] [Doc. No. 45-2].
[7] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 17, lines 12-21, p. 27, lines 2-17].
[8] [*Id.*, p. 17, lines 12-21].
[9] [Doc. No. 1-2, ¶ 7]; [Doc. No. 39-1, ¶ 4].
[10] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 26, lines 1-10].
[11] [*Id.*, p. 26, lines 19-24, p. 51, lines 1-3].
[12] [*Id.*, p. 27, lines 2-10].
[13] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 27, lines 2-17].
[14] [Doc. No. 39-1, ¶ 5]; [Doc. No. 39-3, p. 18-22].
[15] [Doc. No. 37-7, p. 4]; [Doc. No. 39-1, ¶ 6]; [Doc. No. 39-3, p. 16].

previously asserted that the burst pipe damages, and the Hurricane Laura damages do not overlap.[16]

In September 2021, Morris moved into an assisted living facility because of her dementia.[17] At some point after Morris moved in the facility, Skluzacek received power of attorney over Morris.

Skluzacek discovered water on the floors and believed the wet floors were connected to the prior insurance claim.[18] Around June 2022, Skluzacek asked Robert Maddox ("Maddox") from Hahn Roofing to inspect her roof.[19] Maddox attributed the damages to Hurricane Laura.[20] He conceded that the roof may have pre-existing damage, but he had no way of determining "what damage to the roof was caused when."[21]

However, Maddox believed that, even though the original claim was written up as an ice storm claim, the damages were more likely related to Hurricane Laura.[22] Maddox testified that Morris and Skluzacek may not have known the property had roof problems at that time, stating "she probably doesn't know what was wrong with her roof, but she did know what was wrong with her floors when they were wet in the house."[23] Maddox noted that a leak may exist for years before a customer discovers it and asks for an inspection.[24]

On approximately June 18, 2022, Maddox informed State Farm that it needed to inspect the property for Hurricane Laura damages.[25] On June 27, 2022, State Farm told Skluzacek that the date of loss on the burst pipe claim could not be modified to the earlier date of loss for the

---

[16] [Doc. No. 46-1, ¶ 22].
[17] [Doc. No. 42-4, Deposition of Judy Skluzacek, p. 128, lines 17-18].
[18] [Doc. No. 39-8, Deposition of Robert Maddox, p. 27, 10-11, p. 38, lines 23-25, p. 41, lines 3-7].
[19] [*Id*., p. 27, 10-11, p. 38, lines 23-25].
[20] [*Id*., p. 42, lines 23-25, p. 43, lines 1-4].
[21] [*Id*., p. 38, lines 4-12].
[22] [*Id*., p. 42, lines 16-21].
[23] [*Id*., p. 41, 3-13].
[24] [*Id*., p. 42, lines 7-15].
[25] [Doc. No. 39-1, ¶ 7]; [Doc. No. 39-3, p. 16]; [Doc. No. 46-6].

hurricane damage.[26] State Farm advised Skluzacek to file an additional claim for the hurricane damage.[27] On this same day, Skluzacek paid Hahn Roofing a $16,000.00 deposit to replace the roof.[28]

On June 28, 2022, Skluzacek called State Farm to report these damages.[29] On July 21, 2022, State Farm inspected the property.[30] The inspector reported minor wind damage, damaged shingles, cracked tile ridge, and minor water stains from wind driven rain.[31] On July 27, 2022, State Farm informed Skluzacek that the loss fell below the $7,720.00 hurricane deductible.[32] State Farm's file indicates that Skluzacek "agreed and understood."[33] State Farm closed the claim.[34]

State Farm alleges that Skluzacek did not submit any document to State Farm at the time of the denial of coverage.[35] Skluzacek maintains that State Farm took advantage of Morris's mental state and denied the claim because "[n]obody wants to get into an asbestos roof."[36] Skluzacek has previously asserted that the extensive roof damage is clearly visible."[37]

On August 17, 2022, Morris filed a Petition in state court against State Farm.[38] Morris alleged that Hurricane Laura "caused substantial amounts of damage to the Insured Premises'

---

[26] [Doc. No. 39-1, ¶ 8]; [Doc. No. 39-3, p. 15].
[27] [Doc. No. 39-1, ¶ 8]; [Doc. No. 39-3, p. 15].
[28] [Doc. No. 45-5].
[29] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 53, lines 3-5]; [Doc. No. 37-3, Deposition of Judy Skluzacek, p. 69, lines 5-25].
[30] [Doc. No. 39-1, ¶ 10]; [Doc. No. 39-3, p. 5].
[31] [Doc. No. 39-3, p. 5].
[32] [Doc. No. 39-1, ¶ 11]; [Doc. No. 39-3, p. 4, 10, p. 14].
[33] [Doc. No. 39-1, ¶ 11]; [Doc. No. 39-3, p. 4].
[34] [*Id.*].
[35] [Doc. No. 39-1, ¶ 12].
[36] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 63, lines 5-14].
[37] [Doc. No. 39-5, Deposition of Judy Skluzacek, p. 132, lines 4-10].
[38] [Doc. No. 1-2]; [Doc. No. 39-1, ¶ 1].

exterior, interior, and roof."[39] On May 17, 2023, Morris passed away.[40] This Court substituted Skluzacek as the Plaintiff.[41]

As of January 28, 2023, State Farm's corporate representative estimated that it would cost $22,803.95 to repair both the roof and interior.[42] This estimate allegedly does not include any overlap in damages between the pipe claim and the Hurricane Laura claim.[43]

On September 15, 2023, State Farm received an estimate from Hahn Roofing.[44] Hahn Roofing estimated that it would cost $101,832.00 to replace the roof.[45]

On March 15, 2024, Stevephen Lott ("Lott"), a public adjuster with Integrity Claims Consultants, LLC ("ICC"), entered a report on the property.[46] Lott observed that the damage to Morris's roof was "clearly caused by wind and the intrusion of water through wind created openings on the roof as well as through separations in racked windows."[47] However, Lott conceded the damage could have occurred at any point in time.[48] ICC estimated that it would cost approximately $196,000.00 to repair the property.[49]

The Court notes the record is unclear as to whether ICC performed two separate inspections or simply modified an earlier report.[50] A report from Kevin Vanderbrook, P.E. ("Vanderbrook") asserts ICC conducted an inspection on September 20, 2022.[51] An e-mail from Plaintiff's counsel also refers to an earlier ICC inspection.[52]

---

[39] [Doc. No. 1-2, ¶ 11]; [Doc. No. 39-1, ¶ 2].
[40] [Doc. No. 18-5]; [Doc. No. 41-1, ¶ 2].
[41] [Doc. No. 18-5]; [Doc. No. 38-1, ¶ 2]; [Doc. No. 49].
[42] [Doc. No. 45-8, Deposition of Craig Martin, p. 20, lines 2-11].
[43] [*Id.*, p. 35, lines 13-22].
[44] [Doc. No. 42-5, p. 1].
[45] [Doc. No. 39-8, Deposition of Robert Maddox, p. 56, lines 4-12]; [Doc. No. 45-4]
[46] [Doc. No. 39-7, Deposition of Stevephen Lott, p. 53, lines 18-20]; [Doc. No. 45-9].
[47] [*Id.*, p. 53, lines 18-20, p. 53, lines 13-18].
[48] [*Id.*, p. 53, lines 22-25].
[49] [Doc. No. 39-6, p. 5]; [Doc. No. 45-9, p. 29].
[50] [Doc. No. 60, p. 6-7].
[51] [Doc. No. 39-6, p. 5].
[52] [Doc. No. 42-5, p. 1].

On March 19, 2024, Vanderbrook inspected the property.[53] Vanderbrook noted the "poor condition" of the roof and observed that "[t]he roof of this home may have sustained minor damage as a result of wind forces." [54] However, Vanderbrook believed that the delay in reporting made it impossible to causally connect the damages to Hurricane Laura and other recent storms.[55] Vanderbrook ultimately opined that "the damage to the roof … was relatively minimal and may have consisted of a few isolated damaged asbestos tiles. These could have been spot repaired without a complete roof replacement."[56]

On May 17, 2024, State Farm filed this Motion for Summary Judgment.[57] State Farm first asserts that Plaintiff's claims should be dismissed because Plaintiff failed to provide timely notice of her loss.[58] Should the Court not dismiss all of Plaintiff's claims, State Farm alternatively seeks summary dismissal of Plaintiff's bad faith claims because it had "legitimate disputes" regarding coverage.[59]

In response, Plaintiff asserts summary judgment is inappropriate because Morris acted reasonably and fully complied with the Policy.[60] Plaintiff further urges that State Farm cannot demonstrate that any delayed notice prejudiced it.[61] Finally, Plaintiff asserts that State Farm is attempting to use the notice provision to unlawfully shorten Plaintiff's prescriptive period.[62] Plaintiff does not address State Farm's argument that it did not act in bad faith.

The issues have been briefed, and the Court is prepared to rule.

---

[53] [Doc. No. 39-6, Affidavit of Kevin Vanderbrook, P.E., ¶ 3]; [Doc. No. 39-6, p. 4].
[54] [Doc. No. 39-6, Affidavit of Kevin Vanderbrook, P.E., ¶ 6a-6b].
[55] [*Id.*, ¶ 6c]; [Doc. No. 39-6, p. 8].
[56] [Doc. No. 39-6, p. 8].
[57] [Doc. No. 39, p. 1].
[58] [*Id.*].
[59] [*Id.*].
[60] [Doc. No. 45, 11].
[61] [*Id.*, p. 15].
[62] [*Id.*, p. 19].

## II.      LAW AND ANALYSIS

### A.  Standard of Review

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v.  Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248). Further, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when

applied to the undisputed material facts …, under which coverage could be afforded." *Reynolds v. Select Properties, Ltd*., 634 So. 2d 1180, 1183 (La. 1994).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)). "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir.  2020) (citations omitted). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B.  Notice

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. In an action that requires "the

interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decisions." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co*., 352 F.3d 254, 260 (5th Cir. 2003).

Cooperation clauses "fulfill the reasonable purpose of 'enabling the insurer to obtain relevant information concerning the loss while the information is fresh.'" *Holden v. Connex-Metalna Mgmt. Consulting*, No. CIV.A.98-3326, 2000 WL 1741839, *1, *2 (E.D. La. Nov. 22, 2000) (quoting 14 Couch on Ins. § 199:4 (3d.ed 1999)). An insurer may raise a breach of the cooperation clause as a defense in a suit to recover under a policy. *McCartney v. Shelter Mut. Ins. Co*., 255 So. 3d 1060, 1062 (La. App. 1 Cir. 7/10/18).

However, an insurer cannot use a breach of the cooperation clause as "an escape hatch … to flee liability for trivial policy violations, and dismissing a suit for breach of a cooperation clause is a draconian remedy." *McCartney*, 255 So. 3d at 1062. For an insurer to recover for a breach of a cooperation clause, the insured's breach must "be both material and prejudicial", and the insurer has the burden of proving prejudice. *Id*. at 1063. *See also Kerr v. State Farm Fire & Cas. Co*., 934 F. Supp. 2d 853, 858 (M.D. La. 2012), aff'd, 511 F. App'x 306 (5th Cir. 2013); *Beasley v. GeoVera Specialty Ins. Co*., No. CIV.A. 13-395, 2015 WL 2372328, *1, *4 (E.D. La. May 15, 2015).

An insurer is only excused from demonstrating prejudice if the insured violated an express condition precedent for coverage. *See United Home Care, Inc. v. Simpson*, 351 So. 3d 904, 912-13 (La. App. 2 Cir. 11/16/22), *writ denied*, 358 So. 3d 518 (La. 3/28/23) (negating coverage where the policy required compliance and notice of the claims as conditions precedents, and the insured failed to comply); *MGIC Indem. Corp. v. Cent. Bank of Monroe, La*.,

838 F.2d 1382, 1386 (5th Cir. 1988); *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 787 F.3d 276, 284 (5th Cir. 2015).

In all other instances, the insurer must prove (1) the insured breached the insurance policy's cooperation clause and (2) such breach was both material and prejudicial. *See Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir. 1992) (stating that "[t]he rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice"); *Beasley*, 2015 WL 2372328 at *5 ("under Louisiana law, an insurer must show prejudice in order to avail itself of the defense based on an insured's failure to cooperate").

At the outset, the Court notes that the parties here disagree as to whether the Policy's notice requirement is an express condition precedent. The Policy provides that an insured may not sue State Farm under this Policy "unless there has been full compliance with all of the policy provisions."[63] Relevant here, the Policy imposes the following duties:

> **Your Duties After Loss**. After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:
> **a.** give immediate notice to *us* or *our* agent …
> **e.** submit to *us* within 60 days after the loss, *your* signed, sworn proof of loss … However, if loss arises due to a catastrophic event for which a state of disaster or emergency is declared … *you* must submit the proof of loss to *us* within 180 days.[64]

State Farm argues that the Policy requires timely notice as an express condition precedent. The Court does not agree.

Certainly, an insured is required to comply with the terms of the Policy to sue the insurer, but that language alone does not make any of the associated duties an express condition

---

[63] [Doc. No. 24-3, p. 42].
[64] [Doc. No. 39-4, p. 38-39].

precedent. Take, for example, the policy in *United Home Care, Inc.*, which provided that "No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy." *United Home Care, Inc.*, 351 So. 3d at 909. That policy included specific phrasing alerting the insured that compliance was a "condition precedent."

The Policy here does not employ that same language. Instead, this provision is more akin to policies where courts found the provision was not an express condition precedent. *See Kerr*, 934 F. Supp. 2d at 857 ("No action shall be brought unless there has been compliance with the policy provisions"); *Peavey Co.*, 971 F.2d at 1173 ("While Section IV(2) of the policy does require that Degesch 'promptly' notify its insurer, nowhere in the relevant section is there language of it being an express condition precedent to liability"); *Spindel v. Bankers Specialty Ins. Co.*, No. CIV.A. 10-4110, 2010 WL 5439706, *1, *1 (E.D. La. Dec. 28, 2010) ("[n]o action can be brought against [the insurer] unless there has been full compliance with all of the terms under Section I of this policy and the action is started within 5 years after the date of loss").

The Court draws a similar conclusion here. The Policy's language does not provide that timely notice is an express condition precedent. While an insured must comply with the Policy provisions to sue State Farm, that vague assertion alone does not mean notice is an express condition precedent. The term "express" connotes that the policy must clearly and explicitly connect compliance to coverage. Simply asserting an insured must comply with every provision may create an implicit condition precedent, but that condition precedent is certainly not express. Further, even if the provision is arguably ambiguous as to whether it creates an express condition precedent, "any ambiguities within the policy must be construed in favor of the insured to effect,

11

not deny, coverage." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 12/19/00), *opinion corrected on reh'g*, 782 So. 2d 573 (La. 3/16/01).

As such, the Court finds that for State Farm to prevail on this Motion, it must demonstrate (1) Plaintiff breached the Policy and (2) such breach was both material and prejudicial. The Court shall address each in turn below.

### i. Breach

The question of whether a breach has occurred is ordinarily a factual inquiry. *McCartney*, 255 So. 3d at 1063; *Kovesdi v. Allstate Idem. Co.*, No. CIV.A. 10-697, 2010 WL 3835893, *1, *6 (E.D. La. Sept. 24, 2010). "An insurer who hopes to prove an insured's noncompliance with a cooperation clause therefore faces a considerable burden, especially on summary judgment." *Jackson v. State Farm Fire & Cas. Co.*, No. CIV.A. 06-7202 R, 2010 WL 724108, *1, *8 (E.D. La. Feb. 22, 2010). "Louisiana cases holding that an insurer could escape liability because of a breach of a cooperation clause … focus upon ample evidence of noncompliance, often including egregious behavior by the insured." *Id.* at *8.

"Courts have allowed an insured to avoid dismissal upon finding the insured had a reasonable explanation for his actions." *McCartney*, 255 So. 3d at 1063 (dismissing the motion for summary judgment because the insureds "reasonably explained the examination under oath was postponed to allow their counsel to review the relevant material, and [the insurer] did not object"). *See also Beasley*, 2015 WL 2372328 at *4 (stating "courts have found that an insured's claims are not subject to dismissal when the insured has a 'reasonable explanation' for failing to submit to an [examination under oath]").

Here, State Farm maintains that its voluntary consideration of the claim did not constitute a waiver of its timeliness defense. Therefore, State Farm moves for summary judgment based on

Plaintiff's failure to comply with the Policy's conditions. Namely, State Farm asserts that Plaintiff did not timely notify State Farm of the claim and did not submit a timely proof of loss because she waited approximately twenty months to file the claim.  In response, Plaintiff does not contend that State Farm's consideration of the claim constituted a waiver of its defense. Instead, Plaintiff proffers a reasonable explanation for the alleged breach and asserts that this explanation precludes summary judgment.

First, the Court must determine whether State Farm waived the timeliness defense through its consideration of Plaintiff's claim. An insurer may waive its timeliness defense where the insurer reasonably leads the insured to believe that such defense is waived. *Sw. Veterinary Servs., Inc. v. Hartford Cas. Ins. Co*., No. 2:12-CV-2280, 2013 WL 1828048, *1, *5 (W.D. La. Apr. 29, 2013). In this case, the insurance policy required the insured to provide the insurer with prompt notice. *Id*. at *1. The insured delayed reporting its loss for approximately four and a half years. *Id*. The insurer paid a portion of the claim, but the insurer refused to issue any other payments. *Id*. The district court found that the insured did not waive or renounce its timeliness defense by paying a portion of the losses, noting that the insurer repeatedly informed the insured "that any activities in handling the claim did not mean that [the insurer] waived the 'prompt notice' requirements." *Id*. at *5-*6.

This Court similarly finds here that State Farm did not waive its timeliness defense. The record does not indicate that State Farm reasonably led Skluzacek to believe it had waived this defense. Instead, State Farm informed Skluzacek that she could not change the date of loss on her prior claim and instructed her to open a new claim. At no point did State Farm represent to Skluzacek that it intended to waive the timeliness defense by considering her claim. Unlike the insurer in *Sw. Veterinary Servs., Inc.*, State Farm did not pay a portion of the claim. Nor do any

facts indicate that Skluzacek believed State Farm waived the timeliness defense. The Court declines to find that State Farm's voluntary consideration of the claim alone waived its timeliness defense.

As such, the Court must determine whether Plaintiff breached her obligations to timely notify State Farm of the claim. Ultimately, the Court finds that a genuine dispute exists as to whether Plaintiff breached her duties under the Policy. As stated above, this Policy requires an insured to immediately notify State Farm of a loss and to submit a timely proof of loss within 60 or 180 days.[65] At first glance, then, Plaintiff violated this obligation because she waited approximately twenty months to file her claim, despite being aware that Hurricane Laura damaged the roof. Context, however, makes a finding of breach inappropriate at this stage.

The record clearly demonstrates that Morris suffered from dementia at the time Hurricane Laura made landfall. The day after Hurricane Laura, Morris attempted to clean up her property. When Skluzacek told her to file a claim, Morris said she could not "deal with this right now."[66] This statement does not indicate that Morris intended to never file a claim or intentionally chose to delay filing a claim – it indicates only that, at the time the home sustained damage, Morris did not intend to immediately file a claim. Additionally, Skluzacek testified that Morris retired because her dementia made her keep "forgetting things."[67] A reasonable jury could infer, based on Skluzacek's testimony, that Morris intended to file a claim at a later point and then forgot. Thus, even though she observed damage to her roof the day after the hurricane, this Court will not say, as a matter of law, that Morris had the mental capacity to fully understand she needed to make a claim or intentionally refused to make such a claim.

---

[65] [Doc. No. 39-4, p. 38-40].
[66] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 27, lines 2-17].
[67] [*Id.*, p. 17, lines 12-21].

Nor does the fact that Morris later filed a claim automatically mean that Morris had the mental capacity to file the earlier claim and purposefully chose not to report the damages from Hurricane Laura. A person suffering from dementia is not likely to act in a predictable, rational manner, and State Farm has presented no evidence to support such a contention. The mere fact that Morris filed one claim does not automatically mean she had the mental capacity to file another or to understand her contractual obligations.

Finally, the record does not indicate Skluzacek delayed reporting the claim once she received power of attorney over Morris. Skluzacek hired a roofing company to inspect the roof for damages. She then paid a deposit to repair the roof and filed a claim for insurance proceeds to cover those repairs. Skluzacek has also consistently allowed State Farm to inspect the property.

Both Morris's dementia and Skluzacek's actions demonstrate a genuine factual dispute that makes summary judgment inappropriate. A jury may find that Morris's dementia constituted a reasonable explanation for her noncompliance with the Policy. The actions are far unlike the "egregious behavior" for which courts have previously found a breach of a cooperation clause. *Jackson*, 2010 WL 724108 at *8.

Because a genuine dispute exists as to whether Plaintiff breached the cooperation clause, State Farm's Motion is **DENIED** to the extent it seeks to dismiss Plaintiff's claims based on the alleged failure to timely report the losses.

### ii. Prejudice

Even assuming *arguendo* that State Farm demonstrated a breach that precludes coverage, this Court further finds that State Farm has not met its burden to establish actual prejudice.

"An insurer may be relieved of liability only if the breach of the cooperation clause is material and prejudicial. The burden of proving 'actual prejudice falls on the insurer." *Kerr*, 934

F. Supp. 2d at 858. *See also Beasley*, 2015 WL 2372328 at *4 (stating that "[f]or the Court to dismiss an insured's suit based on a breach of a cooperation clause, the insurer must show that the insured breached the cooperation clause and that the breach materially prejudiced the insurer"). This rule serves the important function of preventing "insurers from avoiding their contractual obligations." *Peavey Co.*, 971 F.2d at 1172.

Courts have found prejudice where an insurer's actions deprived the insurer "of the right to properly and thoroughly investigate the claim[,] [and] … by the denial of any meaningful opportunity to settle meritorious claims prior to facing suit and by its potential exposure to a bad faith action"). *Kerr*, 934 F. Supp. 2d at 861. However, an insurer was not prejudiced where the insurer contributed to the undue delay of the handling of a claim. *Beasley*, 2015 WL 2372328 at *5-*6 (noting that the insurer "failed to reschedule the cancelled [examination under oath] for a year, without explanation").

Here, State Farm asserts that the delayed reporting prejudiced it by (1) creating "confusion and inefficiency for State Farm as it tried to understand the insured's hurricane damages", (2) making it difficult to determine causation, and (3) preventing State Farm from attempting to settle the claim prior to suit.[68] In response, Plaintiff claims State Farm failed to meet its burden of establishing prejudice. The Court agrees with Plaintiff.

First, State Farm asserts that the delayed reporting made it difficult to process Morris's claim. The Court acknowledges that the beginning of the claims handling process was rife with confusion as the parties attempted to sort out and distinguish the damages. But this confusion alone does not indicate prejudice. Approximately a month passed between the initial reporting and State Farm's inspection. State Farm has presented no evidence that the confusion during this

---

[68] [Doc. No. 52, p. 3-4].

month prejudiced it in any way. Nor does the Court find that confusion alone constitutes prejudice as a matter of law.

Second, State Farm asserts that the delayed reporting made it difficult to determine causation. The facts do suggest that the delayed reporting made it more difficult to causally connect the damages to Hurricane Laura, but it is arguable that State Farm also contributed to this difficulty. State Farm's inspector discovered minor wind damage on July 21, 2022, but State Farm did not have its engineer inspect the property until March 19, 2024. Vanderbrook asserts in this report that he cannot determine when the roof sustained damages. However, a jury could reasonably find that State Farm's own delay contributed to the difficulty in establishing causation.

Finally, State Farm asserts that the delayed reporting made it impossible to settle the claim prior to suit. However, this argument appears to be advanced through counsel's arguments in its Reply. These assertions are not admissible summary judgment evidence. *Spindel*, 2010 WL 5439706 at *3. The Court finds no other evidence in the record indicating that State Farm would have attempted to settle the claim had it learned of the claim earlier. Nor has State Farm proffered evidence indicating how the inability to settle the claim prejudiced it. Therefore, this contention, too, is meritless.

State Farm has thus failed to establish prejudice. Because State Farm failed to demonstrate the lack of a genuine dispute as to breach and failed to meet its burden of establishing prejudice, summary judgment of Plaintiff's claims based on a breach of the cooperation clause is not warranted.

Accordingly, **IT IS ORDERED** that State Farm's Motion is **DENIED** to the extent it seeks to dismiss Plaintiff's Complaint in its entirety based on a breach of the cooperation clause.

17

### C. Bad Faith

The Court shall now address State Farm's Motion to summarily dismiss Plaintiff's bad faith claims. Plaintiff brought bad faith claims under La. R.S. §§ 22:1973 and 22:1892. "The insured has the burden of proving that the insurer acted in bad faith." *Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 679 (5th Cir. 2009). "The determination of whether an insurer acted in bad faith turns on the facts and circumstances of each case." *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 752 (La. App. 2 Cir. 9/22/99).

Penalties and attorney fees are not assessed unless it is clearly shown that the insurer was in fact arbitrary, capricious, and without probable cause in refusing to pay. *Id*. The Louisiana Supreme Court has equated the phrase "arbitrary, capricious, and without probable cause" to "vexatious" and determined that an insurer acts in that capacity when its "willful refusal of a claim is not based on a good faith defense." *Louisiana Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1253 (La. 1993). "Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 10/21/03).

"[S]tatutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and was acting in good-faith reliance on that defense." *Block*, 742 So. 2d at 752. Statutory penalties are also inappropriate when the insurer had a "reasonable and legitimate question as to the extent and causation of a claim." *Reed*, 857 So. 2d at 1021. *See also Block*, 742 So. 2d at 752; *Fontana v. Louisiana Sheriffs' Auto. Risk Program*, 697 So. 2d 1037, 1040 (La. App. 1 Cir. 6/20/97); *Jackson*, 2010 WL 724108 at *4. Finally, "[a]n insurer cannot be held to

have acted in bad faith simply because it eventually turned out to be wrong about the cause of the damage." *Kodrin*, 314 F. App'x at 679.

Here, State Farm moves for summary dismissal of Plaintiff's bad faith claims on the ground that it had reasonable, legitimate doubts as to causation. Plaintiff did not address this portion of State Farm's motion. Nevertheless, the Court shall construe the record to determine whether Plaintiff's bad faith claims are viable.

As set forth in more detail below, the Court finds that any bad faith claims arising from the initial denial of Plaintiff's claim should be dismissed. However, a genuine dispute exists as to whether State Farm acted in bad faith once litigation began.

### i. Initial Denial

"Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." *Reed*, 857 So. 2d at 1021. Here, the record indicates that State Farm did not act arbitrarily, capriciously, or without probable cause at the time it initially denied Plaintiff's claim.

Maddox informed State that it needed to inspect the property for hurricane damages on June 18, 2022.[69] State Farm conducted this inspection on July 21, 2022, and determined that any damages fell below the hurricane deductible.[70] State Farm informed Skluzacek of this decision, and she allegedly "agreed and understood."[71] Skluzacek did not produce any contrary evidence at this time to contest State Farm's decision. In fact, it was not until September 20, 2022, at the earliest, that State Farm may have received its first estimate from Plaintiff.[72]

---

[69] [Doc. No. 39-1, ¶ 7]; [Doc. No. 39-3, p. 16]; [Doc. No. 46-6].
[70] [Doc. No. 39-1, ¶¶ 10, 11]; [Doc. No. 39-3, p. 4-5, 10, 14].
[71] [Doc. No. 39-1, ¶ 11]; [Doc. No. 39-3, p. 4].
[72] [*Id.*, p. 5].

The only assertion offered by Skluzacek that arguably indicates bad faith is her contention that State Farm took advantage of Morris's mental state and denied the claim because "[n]obody wants to get into an asbestos roof."[73] However, it was Skluzacek, not Morris, who reported the Hurricane Laura claim. The Court additionally notes that this remark appears to be related to State Farm's handling of the prior claim, but bad faith claims allegedly arising from that claim are not before the Court. As such, this contention is meritless.

It cannot be said that State Farm acted arbitrarily, capriciously, or without probable cause at the time it denied Plaintiff's claim. *See Naz, L.L.C. v. Mt. Hawley Ins. Co.*, No. CV 21-1893, 2023 WL 2527052, *1, *4 (E.D. La. Mar. 15, 2023) (granting summary judgment where "plaintiff failed to provide defendant or this Court with any evidence to suggest that defendant acted in an arbitrary or capricious manner when it [initially] denied coverage"). State Farm learned of potential damages and inspected the property in a timely manner. State Farm then determined the losses fell below the deductible, and Skluzacek did not challenge this conclusion until she filed suit. There is no evidence that State Farm's initial denial was in bad faith. Plaintiff has failed to satisfy her burden of demonstrating the existence of a genuine dispute for these claims.

Therefore, State Farm's Motion is **GRANTED** to the extent it seeks to dismiss any claims of bad faith arising from its initial denial of Plaintiff's claim.

## ii.  Events Post-Litigation

This Court cannot so easily dispatch any remaining bad faith claims that may exist. "[A]n insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period." *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186 (La. 4/8/08), on reh'g in part (July 7, 2008).

---

[73] [Doc. No. 45-3, Deposition of Judy Skluzacek, p. 63, lines 5-14].

For example, in *Naz*, the court did not dismiss the insured's bad faith claims to the extent such claims arose from events after the insurer received evidence that contradicted the reasoning for its initial denial. *Naz, L.L.C.*, 2023 WL 2527052 at *5. Specifically, the insured submitted an engineering report that supported the insured's claim of damages. *Id*. The court noted it could not, at the summary judgment stage, weigh the evidence or determine whether the insurer acted reasonably in the circumstances. *Id*. Therefore, "[w]hen plaintiff provided defendant with copies of the reports, whether defendant's subsequent refusal to pay plaintiff after receiving plaintiff's reports is a question of fact reserved for the jury." *Id*. Summary judgment as to those claims was thus inappropriate. *Id*.

The Court finds similar reasoning applicable to the facts here. As discussed above, State Farm's engineer report indicates State Farm received an estimate from ICC on September 20, 2022.[74] Presumably, the findings from this report mirror the findings from the ICC estimate entered on March 15, 2024.[75] Additionally, State Farm received an estimate from Hahn Roofing on September 15, 2023.[76] These estimates indicate the property sustained damages upwards of $100,000.00, and such a finding directly refutes State Farm's conclusion that the damages did not exceed the hurricane deductible. The individuals who prepared these reports also opined that Hurricane Laura may have caused these damages.[77] The Court acknowledges that these experts conceded they could not conclusively determine whether Hurricane Laura caused these damages. However, State Farm did not conduct its own investigation on causation until March 19, 2024. Thus, it is arguable that State Farm had a duty either to re-investigate the home following these

---

[74] [Doc. No. 39-6, p. 5].
[75] [Doc. No. 39-7, Deposition of Stevephen Lott, p. 53, lines 18-20]; [Doc. No. 45-9].
[76] [Doc. No. 42-5, p. 1].
[77] [Doc. No. 39-7, Deposition of Stevephen Lott, p. 53, lines 18-20, p. 53, lines 13-18]; [Doc. No. 39-8, Deposition of Robert Maddox, p. 42, lines 23-25, p. 43, lines 1-4].

estimates or to pay Plaintiff's claim. Determining whether State Farm acted in bad faith in these circumstances is a question reserved for the jury.

Finally, the Court notes that where a portion of a claim is undisputed, the insurer must timely tender the undisputed portion of proceeds. *Patin v. Imperial Lloyds Ins. Co.*, 670 So. 2d 238, 244 (La. App. 3 Cir. 1/17/96). "[A]n insurer who fails to pay said undisputed amounts has acted in a manner that is, by definition, arbitrary, capricious or without probable cause." *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1120 (La. 12/2/08). State Farm's corporate representative testified that, as of January 23, 2023, State Farm estimated it would cost $22,803.95 to repair both the roof and interior.[78] This amount exceeds the hurricane deductible and supports Plaintiff's claim for damages. Thus, while State Farm maintains that it has legitimate doubts regarding causation, a jury may very well find that State Farm acted arbitrarily, capriciously, and without probable cause when it did not pay for this portion of the damages. Such a finding holds even more merit when the Court considers that State Farm's expert did not opine on causation until March 19, 2024, over a year after State Farm completed this estimate.[79]

The record indicates the existence of a genuine dispute as to whether State Farm acted in bad faith. Because the record is unclear as to when exactly State Farm received additional information supporting Plaintiff's claim for damages, the Court shall not limit this finding to a specific date. The Court only holds that summary dismissal of Plaintiff's bad faith claims is inappropriate to the extent she can prove she submitted contradictory evidence once litigation began.

---

[78] [Doc. No. 45-8, Deposition of Craig Martin, p. 20, lines 2-11].
[79] [Doc. No. 39-6, Affidavit of Kevin Vanderbrook, P.E., ¶ 3]; [Doc. No. 39-6, p. 4].

Accordingly, State Farm's Motion is **DENIED** to the extent it seeks to dismiss Plaintiff's claims for bad faith arising from events after Plaintiff submitted evidence to State Farm to support her claim for damages.

## III.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Summary Judgment [Doc. No. 39] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion is **GRANTED** to the extent it seeks to dismiss any claims under La. R.S. §§ 22:1973 and 22:1892 arising from its initial denial of Plaintiff's insurance claim, and those claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's Motion is **DENIED** to the extent it seeks to dismiss Plaintiff's Complaint in its entirety based on her alleged failure to comply with the Policy.

**IT IS FURTHER ORDERED** that Defendant's Motion is **DENIED** to the extent it seeks to dismiss Plaintiff's claims under La. R.S. §§ 22:1973 and 22:1892 arising from events after Plaintiff submitted evidence to State Farm to support her claim for damages.

MONROE, LOUISIANA, this 18th day of July 2024.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE